UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICOLE WATKINS o/b/o MRJ, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:20-CV-433 NAB |
| KILOLO KIJAKAZI[1], | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the appeal of M.R.J., Nicole Watkins' grandson ("Plaintiff"), regarding the denial of supplemental security income ("SSI") under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 11.) The Court has reviewed the parties' briefs and the entire administrative record. Based on the following, the Court will affirm the Commissioner's decision.

**I.    Issues for Review**

Plaintiff presents one issue for review. He asserts that the administrative law judge ("ALJ") erred by improperly determining Plaintiff did not functionally equal a listed impairment, specifically that the ALJ's analysis of the domain of interacting and relating with others was not

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

supported by substantial evidence. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole.

**II.     Background**

The Court briefly summarizes the facts below and will discuss specific additional facts as they are relevant to the parties' arguments.

**A.  Medical Records and Physician Evaluations**

In February 2016, Plaintiff was referred to a pediatric neurologist by his pediatrician, Dr. Menon, for possible seizure activity described as "staring spells." Plaintiff's grandmother[2] also reported to Dr. Menon that Plaintiff had problems with learning and anger. Plaintiff's grandmother reported that although he was in second grade, at the time Plaintiff was probably doing kindergarten level work. (Tr. 304-307.) On March 3, 2016, Plaintiff had his initial visit with Tracy Connell, CPNP, at the New Onset Seizure Clinic at the Pediatric Epilepsy Center at Washington University for an initial evaluation of the potential seizures. (Tr. 228.) After being admitted for video EEG monitoring, no clinical or subclinical seizures were identified, but Nurse Practitioner Connell noted that Plaintiff's grandmother reported that Plaintiff seemed lost, his short term memory was not the best, he was a bit impulsive and inattentive. Plaintiff's grandmother reported that he had not been evaluated for ADD or ADHD, that in the past he had an Individualized Education Plan ("IEP") when he was much younger, but in 2016 he did not have an IEP and was not in special education classes. (Tr. 218.)

---

[2] Plaintiff's medical records from Dr. Menon's office often refer to Plaintiff's mother, but other records reflect that Plaintiff does not have contact with his maternal mother and lives with his grandmother. (Tr. 40, 191.) For example, Dr. Menon states Plaintiff's "*mother* to try to arrange IEP at school" (Tr. 288) but the same record also states patient was accompanied by his *grandmother* (Tr. 284) (emphasis added). Consistent with Plaintiff's brief, the undersigned presumes that Plaintiff's grandmother was attending Plaintiff's appointments, even when the medical records suggest Dr. Menon discussed treatment with Plaintiff's mother.

Nurse Practitioner Connell referred Plaintiff to Christopher Bosworth, Ph.D., for neuropsychological testing. On November 22, 2016, Dr. Bosworth conducted a neuropsychological assessment of Plaintiff. (Tr. 235.) Following a detailed assessment that included a review of Plaintiff's history, discussions with Plaintiff and his grandmother, observations of Plaintiff and testing sessions, discussed further *infra,* Dr. Bosworth diagnosed Plaintiff with ADHD. (Tr. 239.)

On January 31, 2017, Plaintiff returned to Dr. Menon following his assessment by Dr. Bosworth. Dr. Menon prescribed Plaintiff Adderall for his ADHD. (Tr. 292.)

In March 2017, state agency consultants Steven Akeson, Psy.D. and Judee Bland, M.D. reviewed Plaintiff's application for SSI. (Tr. 56-63.) They found Plaintiff had less than marked limitations in acquiring and using information and interacting with others; marked limitation in attending and completing tasks; and no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being.  (Tr. 59-60.) In support of the less than marked limitation in interacting and relating with others, Dr. Akeson simply wrote "MER does not support more than mild problems in this domain." (Tr. 60.) Following their review, Plaintiff's claim was initially denied because Plaintiff's condition resulted in some limitations in the ability to function, but the limitations were not severe enough to be considered disabling under the rules. (Tr. 61.)

On July 31, 2017, Plaintiff returned to Dr. Menon for his annual physical. (Tr. 284.) Although Dr. Menon prescribed Adderall at Plaintiff's January 2017 visit, his July visit record reflects he was not taking any medication, with the exception of applying hydrocortisone to a rash. (Tr. 284.) Dr. Menon did note that his grandmother was trying to arrange an IEP at school.

3

On November 3, 2017, Plaintiff returned to Dr. Menon. The medical record indicates that Plaintiff was not taking his medication consistently and Plaintiff or his grandmother reported that Plaintiff has poor school performance and has an IEP at school. (Tr. 281.) (This report is contradicted by the October 2017 school records, discussed *infra*, which reflect that Plaintiff did not qualify for an IEP.) Dr. Menon counseled Plaintiff on the usage of the medication and refilled his Adderall prescription. (Tr. 283.) Dr. Menon refilled Plaintiff's Adderall prescription over the phone in November 2017, January 2018, February 2018, March 2018, May 2018, and June 2018. (Tr. 271-272, 277-280.) On March 28, 2018, Plaintiff returned to Dr. Menon's office for an appointment and his prescription was refilled. At the appointment, his grandmother reported Plaintiff had poor school performance and problems with his peer group. (Tr. 273-276.) On or around June 28, 2018, Plaintiff missed his appointment with Dr. Menon. (Tr. 270.) On July 6, 2018, Plaintiff saw Dr. Menon for his annual physical and follow up on his ADHD. (Tr. 265-269.) Plaintiff reported no concerns at that time. (Tr. 266.)

    **B. School Records**

In October 2017, Plaintiff was evaluated for special education services by the Special School District of St. Louis County to determine if he qualified for an IEP. Plaintiff's grandmother reported her concerns about his attention span and focus. Plaintiff was prescribed Adderall following his December 2016 ADHD diagnosis, but was noted to be without medication since the beginning of October 2017. Plaintiff was also prescribed glasses, but he rarely wears them at school. At the time of the evaluation, Plaintiff received 90 minutes of daily reading intervention with the reading specialist, and has shown improvement since the beginning of the year. (Tr. 191.)

Following a comprehensive educational evaluation, the school district found that Plaintiff did not meet the Department of Elementary and Secondary Education (DESE) criteria for

4

educational disabilities.³ (Tr. 196.) A social history interview completed with Plaintiff's guardian indicated that he met all developmental milestones within normal limits. Results of the evaluation indicated that Plaintiff's educational performance was not adversely impacted by limits associated with his health condition, and his educational performance did not indicate he required special education. (Tr. 197.) His latest report card for the first quarter of the 2017-2018 academic year reflects that only two behavior and work habits were rated "Needs Improvement": demonstrates self-control and follows directions oral and/or written. All other behavior and work habits were rated "Satisfactory," including respects authority, follows class and school rules, resolves conflicts with appropriate strategies, interacts appropriately with peers, works cooperatively in groups, follows procedures, starts and completes work on time, demonstrates consistent effort, focuses attention to task, works independently, organizes self for learning, participates meaningfully in class discussion, writes legibly using writing tools appropriate, uses classroom time wisely, completes homework on time, returns school work as requested, and uses technology and resource materials. (Tr. 191.)

Plaintiff's school records include a Disciplinary Summary identifying six incidents occurring between November 10, 2017 and May 4, 2018. (Tr. 204-205.) The incidents included three fighting incidents, one physical aggression, one dangerous behavior, and one disruptive behavior. Plaintiff received an in-school suspension for five of the incidents and an out-of-school suspension for one of the fights. (Tr. 205.)

---

³ The notice of Plaintiff's ineligibility was signed by the school psychologist. The considerations for Plaintiff's eligibility included Dr. Bosworth's Neuropsychological Assessment, a review of records, parent and teacher reports of current academic and functional performance, and the following tests: Kaufman Assessment Battery for Children, Second Edition (KABC-II), Kaufman Test of Educational Achievement, Third Edition (KTEA-3), Behavior Rating Inventory of Executive Function, Second Edition (Brief-2), Vineland Adaptive Behavior Scales, 3rd Edition (Vineland-3). (Tr. 199.)

### C. Hearing before the ALJ

At the administrative hearing held on September 19, 2019, Plaintiff testified that he enjoys school and his favorite subject is math. (Tr. 38-39.) He testified that he enjoys reading, watching tv, and playing video games. (Tr. 41-42.) He has a small group of friends at school. (Tr. 44.) At home he plays football and basketball outdoors with his friends. (Tr. 38, 43.) He helped take care of a former family pet and anticipates feeding and walking a new dog his grandmother plans on adding to the family. (Tr. 43-44.) He spends time with his grandfather when he is not at work, and he spends a lot of time with his grandmother. (Tr. 46-47.) They go out to eat and go to the movies. (Tr. 47.)

Plaintiff's grandmother testified that Plaintiff is not currently in an IEP, but he had one last year. (Tr. 48.) She testified that Plaintiff gets along with everyone, but his math and reading skills are not where they should be, and that his motor skills are very low. (Tr. 48-52.) She confirmed that he plays outside with neighborhood kids, and that he has five siblings, two whom he sees on occasion. (Tr. 52-53.)

### III. Standard of Review

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it sufficient to support a conclusion." *Id*. In evaluating the substantiality of the evidence, the Court must consider evidence which supports the ALJ's decision as well as any evidence which fairly detracts from the decision. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Where substantial evidence supports the ALJ's decision, the decision may not be reversed

6

merely because substantial evidence may support a different outcome. *Id.; Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a)(3)(C)(I).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment is severe, the Commissioner must determine whether such impairment meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations (the Listings). 20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). If the impairment meets or medically equals a listed impairment, the child is disabled. *Garrett*, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals a listed impairment. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 956 (E.D. Mo. 2017).

To qualify as functionally equal to a listed impairment, a child's condition must result in an "extreme" limitation of functioning in one domain of functioning, or "marked" limitations in

7

two domains of functioning. 20 C.F.R. § 416.926a(a). The domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains used by the Commissioner in making such a determination are: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-Being. *Id.* If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001). The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g).

> A child-claimant has a "marked" limitation in a domain when his
>
> impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i). Not every activity in a domain must be markedly limited in order for the child's functioning in the domain as a whole to be considered so. *Id*. A marked limitation is also defined as "the equivalent of the functioning" expected to be found "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."[4] *Id*.

A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). In determining whether a limitation on a child-claimant's functioning may be marked or extreme, the Commissioner must review all the evidence of record and "compare [the

---

[4] Scores that are three or more standard deviations below the mean indicate an "extreme" limitation. *Id*. § 416.926a(e)(3)(i).

child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining child-claimant's functioning, Commissioner looks "at how appropriately, effectively and independently [the child] perform[s] [her] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

In the only domain at issue in this case—ability to interact and relate with others—the ALJ is to consider how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). By the time the child reaches school age (age 6 to attainment of 12), the child should be able to develop more lasting friendships with children who are their age. He should begin to understand how to work in groups to create projects and solve problems. He should have an increasing ability to understand another's point of view and to tolerate differences. He should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

Examples of limited functioning in interacting and relating with others include that the child does not reach out to be picked up and held by a caregiver; the child has no close friends, or friends that are all older or younger than the child; avoids or withdraws from people the child knows, or is overly anxious or fearful meeting new people or trying new experiences; has difficulty playing games or sports with rules; and has difficulty communicating with others, i.e., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance. 20 C.F.R. § 416.926a(i)(3).

9

### IV. Discussion

#### A. ALJ's Decision

Following the denial of Plaintiff's application at the initial administrative level, Plaintiff requested an evidentiary hearing before an ALJ, which was held on September 19, 2018. (Tr. 34.) Plaintiff (then 10 years old and in fifth grade) and his grandmother (who is also his guardian) testified at the hearing. (Tr. 38-53.) On March 27, 2019, the ALJ issued her decision. The ALJ found that Plaintiff was born on April 10, 2008, and was a school-age child on January 30, 2017, the date the application was filed. (Tr. 13.) The ALJ further found that Plaintiff has not engaged in substantial gainful activity since the application date. *Id.* Next, the ALJ found that Plaintiff has the following severe impairments: attention deficit/hyperactivity disorder ("ADHD") and history of febrile seizures. *Id.*

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listed impairments. (Tr. 14.) Specifically, the ALJ considered the six functional equivalence domains and determined that Plaintiff had (a) less than marked limitation in acquiring and using information (Tr. 21); (b) marked limitation in attending and completing tasks (Tr. 22); (c) less than marked limitation in interacting and relating with others (Tr. 23); (d) no limitation in moving about or manipulating objects (Tr. 24); (e) no limitation in the ability to care for himself (Tr. 25); and (f) less than marked limitation in health and physical well-being (Tr. 25). Therefore, the ALJ found that Plaintiff was not disabled, as defined in the Act, from the date his application was filed through March 27, 2019, the date of the decision. (Tr. 26.)

### B.     Functional Equivalence in Domain of Interacting and Relating with Others

Plaintiff argues that the ALJ's finding that Plaintiff did not have the functional equivalent of a listed impairment is not supported by substantial evidence because the ALJ erred in finding less than marked limitation in interacting and relating with others. Specifically, Plaintiff argues that in determining Plaintiff had less than marked limitation in interacting and relating with others, the ALJ erred in relying on a selective reading of Dr. Bosworth's opinion; failing to explain how her selective findings support the conclusion of less than marked limitation in interacting and relating with others; and relying on non-examining state agency physicians. Respondent counters that the ALJ's decision was supported by substantial evidence.

With respect to interacting and relating with others, the ALJ stated:

> The claimant has less than marked limitation in interacting and relating with others. According to the neuropsychological assessment, areas of concern in behavioral regulation include being fidgety, not thinking before doing, getting out of control more than friends, talking at the wrong time, getting out of his seat at the wrong time, acting too wild or "out of control," having trouble putting the brakes on his actions, becoming too silly, being unaware of how his behavior affects or bottlers [sic] others, having poor understanding of his own strengths and weaknesses, not realizing that certain actions bother others, not noticing when his behavior causes negative reactions, resisting or having trouble accepting a different way to solve a problem with schoolwork, friends, tasks, etc., having explosive, angry outbursts, having outbursts for little reason, small events triggering big reactions, changing moods frequently, having angry or tearful outbursts that are intense but end suddenly, becoming upset too easily.

(Tr. 23.)

Plaintiff argues that in the ALJ's analysis with respect to this domain, she only explicitly references Dr. Bosworth's neuropsychological assessment, and does not explain how the findings cited support her conclusion of a less than marked limitation. (Doc. 18 at 8.) Plaintiff is also critical because the ALJ's statement regarding interacting and relating with others purportedly does not include the October 2017 Evaluation Report from the Special School District that includes

assessments from the school psychologist, teachers, Plaintiffs' grandmother, and discipline records. (Doc. 18 at 12.)

Plaintiff's argument is based on a false premise. A closer look at the record reveals that these are not Dr. Bosworth's findings; rather, the areas of concern itemized by the ALJ regarding behavioral regulation are areas identified by Plaintiff's grandmother, Ms. Watkins, as part of the October 2017 Behavior Rating Inventory of Executive Function (BRIEF-2) evaluation by the school district. *Compare* Tr. 18 and 193 (school records) *with* Tr. 245-238 (Dr. Bosworth's assessment). The BRIEF-2 is an assessment of executive function behaviors at home and allows for guardians and teachers to complete a questionnaire based on observations and interactions with Plaintiff. (Tr. 192.) Ms. Watkins, Plaintiff's fourth grade teacher, library teacher, and art teacher each completed a questionnaire. The Evaluation Report noted that "[t]he Negativity Scale for Ms. Watkins was Elevated" and the other respondents (who identified fewer areas of concern) validity scales were within appropriate limits. (Tr. 193.)

It appears that the ALJ merely lists areas of concern in behavioral regulation that support a less than marked limitation (as opposed to no limitation). Therefore, the ALJ did not limit consideration to the 2016 assessment by Dr. Bosworth as Plaintiff suggests. The ALJ took into account the October 2017 Evaluation Report, including the list of concerns identified by Plaintiff's grandmother.

A comparison of the record to the ALJ opinion reflects that the ALJ provided a more comprehensive summary of the record prior to assessing the individual domains. Plaintiff argues that the ALJ relied on a selective reading of Dr. Bosworth's opinion. The undersigned disagrees. In addition to referencing Dr. Bosworth's assessment in the individual sections for the six functional equivalence domains, the ALJ also dedicates one and a half pages, single-spaced, to a

neutral summary of Dr. Bosworth's fourteen-page report.[5] (Tr. 16-17, 235-248.) The ALJ highlighted that Dr. Bosworth observed Plaintiff appeared to be sleepy and his effort was inconsistent, but following the initial drowsiness, Plaintiff presented as friendly and pleasant. His affect was appropriate although he appeared irritable at times. He displayed variable compliance effort and task engagement throughout the testing session but responded well to encouragement. His general approach was impulsive, but his activity level was appropriate. His language comprehension was intact, and he appeared to understand and follow all directions, although he required repetition of instructions at times. When communicating he had difficulty organizing longer responses, but speech was clearly articulated and informal conversation was easily elicited. (Tr. 16, 235-248.) Dr. Bosworth found that although Plaintiff's IQ was in the impaired range, his presentation was not consistent with a diagnosis of an intellectual disability. Additionally, his IQ measure was believed to have been impacted by fatigue and variable effort/compliance during testing. Plaintiff's presentation was consistent with ADHD. Dr. Bosworth acknowledged that ADHD symptoms and difficulties with executive functions were likely to present academic challenges, but that Plaintiff possessed strengths which would offset risks associated with ADHD. He displayed many areas of intact skill and maintained a positive view of school, teachers, peers, and himself. (Tr. 17, 237, 239-240.) The ALJ's summary of Dr. Bosworth's assessment was not selective and does not support a marked limitation in interacting and relating with others.

      Plaintiff is also critical of the ALJ's reliance on the state-examining physicians' opinion of less than marked limitation in interacting with others. Specifically, Plaintiff objects that it was

---

[5] In contrast, Plaintiff's summary of Dr. Bosworth's neuropsychological assessment in Plaintiff's Statement of Facts is exactly the type of "selective reading" Plaintiff condemns. (Doc. 18 at 3-4.) Plaintiff also selectively summarizes the educational records. (Doc. 18 at 4-5.) For example, in summarizing the evaluation that was conducted in order to determine whether Plaintiff qualified for an IEP or other special education services, Plaintiff omitted the school district's ultimate conclusion that Plaintiff did not qualify for an IEP.

error to rely on the state agency consultants' opinion because the opinion was provided prior to the admission of the educational report that revealed greater limitations in interacting and relating with others. However, nothing in the Social Security regulations requires a report to be within a certain time period for an ALJ to rely on it. *See Gallup v. Saul*, 2020 WL 5107282, at *4 (E.D. Mo. Aug. 31, 2020). Additionally, "'[b]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision.'" *Hildreth v. Saul*, 2020 WL 5517588, at *8 (E.D. Mo. Sept. 14, 2020) (quoting *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Nor does legal authority require a consultant's medical opinion to be based on subsequently-created medical records for an ALJ to rely on it. *Barker v. Colvin*, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").

Furthermore, the opinions of state agency medical examiners merit significant consideration, as ALJs are required by regulation to consider their findings of fact about the nature and severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(f); 20 C.F.R. §§ 404.1513a(b)(1) (ALJs "must" consider evidence proffered by a state agency disability examiner, "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); *see also Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (An ALJ may credit the opinion of a non-examining or non-treating medical provider over the assessments or notes of the treating physician.).

14

Although the ALJ could have articulated more clearly the basis for not finding a marked limitation in this domain, substantial evidence nonetheless supports the determination that Plaintiff has no more than a mild impairment. *See, e.g., Taylor ex rel. McKinnies v. Barnhart,* 333 F. Supp. 2d 846, 855 (E.D. Mo. 2004) (affirming less than marked limitation with respect to interacting and relating with others where the child had a history of fighting, theft, and general antisocial behavior, but also maintained good interpersonal skills, enjoys playing sports, has neighborhood friends, and communicates effectively with others). The record and the ALJ indicate that Plaintiff has communication and behavior difficulties. However, Plaintiff did not qualify for an IEP and there is no evidence of a medical professional imposing any restrictions on Plaintiff. The record indicates that Plaintiff has a positive outlook on school, his peers, and himself. He enjoys spending time with his family, playing with friends, playing sports with neighborhood kids, and helps feed and walk his pets. He was rated Satisfactory in most behaviors and work habits in his most recently provided report card, including in interacting appropriately with peers, working cooperatively in groups, following class and school rules and following procedures. Under these circumstances, substantial evidence supports a less than marked limitation in interacting and relating with others.

**V.     Conclusion**

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 18.)

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

 

                                              NANNETTE A. BAKER
                                              UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2022.